File Into Evidence·
Lodge On Demand

Constantine Quisto Akelkok #485026          September 24th, 2019
Goose Creek Correctional Center
22301 West Alsop Road
Wasilla, Alaska DMM 122.32

The State of Alaska (A.S. 45.77.020 (3))
Public Defender Agency
Assistant Public Defender-Christopher S. Lesch
P.O. Box 929
Dillingham, Alaska 99576-0929

RE: The State of Alaska d/b/a THE STATE OF ALASKA (A.S. 45.77.020 (3)), declined
to indict,   case number 3DI-19-00359 CR within 10 days when in custody.

Dear Mr. LESCH,

I am coming in as, 1) Competent 2) Superior and 3) holder in Due-Course position, I
understand and have knowledge of the 3 forms of court.

A defendant who has been allegedly charged with any felony but is not indicted by
the Grand Jury (see Alaska Constitution Article I, Section 8) is entitle by law
to a preliminary examination in the district court.

Mr. LESCH, I gave you direct information September 19, 2019, at 9:05 AM-9:10 AM
from Goose Creek Correctional Center, that I did not receive any, Grand Jury
Indictment information.

I believe the state district attorney's office stationed at or near Dillingham
is compelled to indict, Defendant within 10 days on a single charge of Sexual
Assault in the Second Degree.

This is a direct violation (and exercising my Constitutional Rights both State and
Federal) of my Constitutional Rights. According to Alaska Constitution Article I,
sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 21 and 22.
Furthermore, my United States Constitution, Amendments 1, 4, 5, 6, 8, 9, and 10.
I am reserving my rights under; Uniform Commerical Code 1-308 PERFORMANCE OR ACCEPT-
ANCE UNDER RESERVATION OF RIGHTS, without prejudice and under protest. Former
section 1-207 of the UCC.

Mr. LESCH, I am giving you direct imformation  to put in a motion for a dismissal
on the case number seen above, for the STATE OF ALASKA failed to indict above case
within 10 days, it is a direct violation of my State and Federal Constitutional
Rights and Human Rights. Please respect my wishes and put a motion for dismissal
with prejudice. All felonies and misdeameanors charges, I exercise my Rule 5.
I would like to also inform you Mr. LESCH, you do not have my Consent to waive,

Page 1 of 2

continue and or postpone Rule 45. I hope you can act professional with this matter asserted. Thank You.

I, Constantine Quisto Akelkok, d/b/a CONSTANTINE QUISTO AKELKOK or any other derivatives, certify under the penalties of perjury that the foregoing is true.

state of alaska ⎤
                ⎥ ss:
Wasilla         ⎦

I, _Jeff Talley_____ a notary for the public that on or about

September ___, 2019. Signed before me Constantine Quisto Akelkok d/b/a

CONSTANTINE QUISTO AKELKOK or any other derivatives.

_____
Notary Signature

My Notary Expires: _with office_



GRANTOR: CONSTANTINE Q. AKELKOK

_Constantine Quisto Akelkok_
Constantine Quisto Akelkok, Donee
Uniform Commerical Code 1-308/1-207
Without Prejudice, Under Protest

cc: Assistant Public Defenders-DLG
Assistant District Attorney-DLG
Alaska Court System-DLG

Page 2 of 2

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT DILLINGHAM

| | | |
|---|---|---|
| STATE OF ALASKA | § | |
| Plaintiff | § | |
| | § | |
| Vs. | § | |
| | § | |
| CONSTANTINE Q. AKELKOK | § | |
| Defendant | § | Docket Case #3DI-19-00359 CR |

## MOTION TO DISMISS FOR DENIAL OF CONSTITUTIONAL RIGHTS OF DUE PROCESS AND RIGHT TO SPEEDY TRIAL
(United States Constitution Amendments 5 & 6; Federal Rule of Criminal Procedure 48 (b))

Defendant, Constantine Quisto Akelkok, self represented, without the assistance of counsel, exercising Federal Rule of Criminal Procedure Rule 48 (b), Alaska Rule of Criminal Procedure Rule 12 (a) and Rule 45, moves the court to dismiss, the charges count I sexual assault in the first degree, count II sexual assault in the second degree and count III sexual abuse of a minor in the second degree of the indictment, case number 3DI-19-00359 CR.

"Rule 45 was promulgated to insure protection of the constitutional right to a speedy trial and to advance the public interest in swift justice." Peterson v. State, 562 P.2d 1350, 1358 (Alaska 1977).

The grounds for the motion, Defendant's Due Process right under the 5th Amendment of the United States Constitution to prompt initiation of the prosecution, Defendant's right exercising 6th Amendment of the United States Constitution to a public and speedy trial. Defendant's right to prosecution is unreasonable being delayed, exercising Rule 48 (b) of the Federal Rule of Criminal Procedure, have all been denied by the prosecution's deliberate and persisten pattern of oppressive and prejudicial delays in case number 3DI-19-00359 CR.

Defendant further exercises, 14th Amendment of the United States Constitution is violated by the prosecution, for oppressive incarceration and deprive

Defendant's fundamental rights and freedoms that are rooted in the Bill of Rights. Defendant demands the court and the prosecution, public and speedy trial right under the 6th Amendment of the United States Constitution, Speedy Trial Act in 1974 and 18 U.S.C.S §3161 is deeply rooted in this Nation's history and tradition.

Defendant has not been brought to a public and speedy trial within 120 days, and exercising Alaska Rule of Criminal Procedure Rule 45. The right to a speedy trial fulfills several purposes. One is to prevent harming the Defendant by a weaking of case as evidence and memory of witnesses grow stale with the passage of time. Another is to prevent prolonged pre-trial incarceration and infliction of anixety on the Defendant because of long pending charges in case number 3DI-19-00359 CR.

The safeguard of the 6th Amendment is to keep people, like the Defendant who has not been convicted to serve lengthy jail time. Rule 45 commences on date the charging documents are served, August 20, 2019 - October 3, 2019 on the Defendant. [see Alaska Statute 12.25.160 Definition for Arrest] The speedy trial rule provides a 120 day public and speedy trial period and must be defined in comformity with the statutory definition of the arrest.

United States Constitution 6th Amendment does not set out a specific time within which a speedy trial must commence in order to be deemed speedy, Rule 45 is 120 days, establishing a time limit and an expiration must result in a dismissal of Defendant's charges, count I sexual assault in the first degree, count II sexual assault in the second degree, and count III sexual abuse of a minor in the second degree of the indictment, case number 3DI-19-00359 CR with prejudice. The prosecution and court delaying Defendant's public and speedy trial, violating Defendant's 6th Amendment of the United States Constitution, 5th Amendment of the United States Constitution and Alaska's Article I §11 of the Alaska Constitution.

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 4 of 53

The Supreme Court reaches this conclusion on the basis of its interpretation of Alaska Constitution Article I, §11. The courts, and prosecution's duty is to afford the Defendant a speedy trial and a clear denial of Defendant's 6th Amendment right is denied for 22 months the court must dismiss all charges in the indictment, case number 3DI-19-00359 CR.

Background of case number 3DI-19-00359 CR

The alleged charges purportedly occured on July 19-20, 2019. The Defendant was arrested on July 20, 2019 and August 19, 2019. These alleged charges, count I, count II and count III until the indictment, October 19, 2019. During the interval, violation of Defendant's 6th Amendment of the United States Constitution and Alaska Constitution Article I, §11 for unreasonable delay for 22 months, this May 2021, without any waivers from the Defendant. Since the Defendant's indictment 19 months have elapsed.

Barker v. Wingo has established a four-factor test for evaluating whether the constitutional right to a speedy trial has been violated. The inquiry focuses on; (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; (4) the prejudice suffered by the defendant. 407 U.S. at 530-31. "[N]o one factor is dispositive nor 'talismanic.'" Hakeem v. Beyer, 990 F.2d 750, 770 (3d Cir. 1993)(quoting Barker, 407 U.S. at 533. United States v. Velazquez, 749 F.3d 161, 174 (3d Cir. 2014).

6th Amendment of the United States Constitution states in that: In all criminal prosecution, the accused shall enjoy the right to a speedy and public trial. And Alaska Constitution Article I, §11 states that: In all prosecutions, the accused shall have the right to a speedy and public trial.

The burden is upon the State of Alaska to give the Defendant a speedy trial or be denied the power to prosecute. The United States Supreme Court, through

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 5 of 53

the Due Process Clause of the United States Constitution 14th Amendment, makes applicable to the states 6th Amendment of the United States Constitution right to speedy trial.

The burden is upon the State of Alaska to give a speedy trial or be denied the power to prosecute.

Federal Rule of Criminal Procedure Rule 48 (b) implements the Defendant's Constitutional right to a public and speedy trial under the 6th Amendment for the prosecutions failure to prosecute and bring Defendant to trial. Third Judicial District at Dillingham, Superior Court for the State of Alaska violated Defendant's Constitutional right to a public and speedy trial under the 6th Amendment of the United States Constitution for suspension of jury trial.

The Supreme Court of Alaska and chief justice made decisions to continue an order to suspend with no regard to Defendant's 6th Amendment of the United States Constitution. The substantive policy decision was reimplemented each time it was reconsidered to suspend, Constitutional right of the Defendant and delayed Defendant's speedy trial without any waiver from Defendant. (see United States v. Henning, 2021 U.S. Dist. LEXIS 12246 Case No. SACR 16-00029-CJC-7).

In conclusion Defendant exercising the 6th Amendment of the United States Constitution, through the 14th Amendment of the United States Constitution, Constitutional right to a speedy and public trial. The prosecution denied Defendant's Due Process, 5th Amendment of the United States Constitution for unreasonable delays and failed to bring Defendant, Constantine Quisto Akelkok, to a public and speedy trial for the alleged charges, count I sexual assault in the first degree, count II sexual assault in the second degree and count III sexual abuse of a minor in the second degree. The court must dismiss these charges in case number 3DI-19-00359 CR, with prejudice for Due Process violations and speedy trial violations under 5th and 6th Amendments of the United States Constitution.

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 6 of 53

Self-Certification (No Notary Available)

As allowed by Alaska Statute 09.63.020. I, Constantine Quisto Akelkok, certify under the penalty of perjury that the following is true:

   1) I am attaching this Self-Certification to documents/instruments that are attached, MOTION TO DISMISS FOR DENIAL OF CONSTITUTIONAL RIGHTS OF DUE PRO-CESS AND RIGHT TO SPEEDY TRIAL.

The attached documents/instruments was served to the, District Attorney's Office P.O. Box 470 Dillingham, Alaska 99576 and Alaska Court System c/o Clerk of Court P.O. Box 909 Dillingham, Alaska 99576. Defendant has attached this Self-Certification to the documents/instruments when I served them.

   2) No Notary Public or other person with the power to take oath is available to watch Defendant autograph these documents/instruments, there is no available Notary Public present.

   3) I, Constantine Quisto Akelkok, told the truth to the best of my knowledge and understanding in the attached documents/instruments.

April 28th, 2021
_____
            Date

Constantine Quisto Akelkok
_____
Constantine Quisto Akelkok, Self-Represented
Goose Creek Correctional Center
22301 West Alsop Road
Wasilla, Alaska        DMM 122.32

cc:
Alaska Court System c/o Clerk of Court- Dillingham
District Attorney's Office- Dillingham

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 7 of 53

# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
## THIRD JUDICIAL DISTRICT AT DILLINGHAM

STATE OF ALASKA,  )
                Plaintiff,  )
    vs.  )
                   )
CONSTANTINE AKELKOK,  )
                Defendant.  )    Case No. 3DI-19-00359CR
_____  )

## Order Denying Defendant's Motion to Dismiss for Denial of Constitutional Rights of Due Process and Right to Speedy Trial

On May 4, 2021, Defendant Constantine Akelkok filed a *Motion to Dismiss for Denial of Constitutional Rights of Due Process and Right to Speedy Trial.* The State filed its opposition on May 21, 2021. Mr. Akelkok contends he was denied his right to a speedy trial under the federal and state constitutions, and Alaska Rule of Criminal Procedure 45.[1] Conversely, the state argues that Mr. Akelkok was not deprived of his constitutional right to a speedy trial, nor did a violation of Rule 45 occur.

### I.    Relevant Facts

Mr. Akelkok was arrested on August 22, 2019[2] for allegedly committing Sexual Assault in the Second Degree[3] and first came before the court on the following day. The Public Defender Agency was appointed to represent Mr. Akelkok and Christopher Lesch of the Alaska Public Defender Agency filed an Entry of Appearance on August 29, 2019.

---

[1] Mr. Akelkok also cites Federal Rule of Criminal Procedure 48 and the Speedy Trial Act of 1974. F. R. Crim. P. 48 (Authorizing various avenues for dismissal in federal prosecutions); and 18 U.S.C. §§ 3161-74, respectively. However, the Federal Rules only apply to federal courts unless specifically noted in the text of the rules. F. R. Crim. P. 1(a)(2). Federal Rule 48 does not indicate it shall apply to state courts, therefore it does not apply. Likewise, the Speedy Trial Act of 1974 only applies to federal criminal prosecutions. 18 U.S.C. §§3161(a), 3172.
[2] Arrest Warrant (Issued Aug. 22, 2019).
[3] AS 11.41.420(a)(3)(C).

On October 11, 2019, Mr. Akelkok was indicted on three counts: 1) Sexual Assault in the First Degree;[4] 2) Sexual Assault in the Second Degree;[5] and 3) Sexual Abuse of a Minor in the Second Degree.[6]

A pretrial conference (hereinafter "PTC") was held on November 12, 2019, where the defense requested a continuance to perform motion work that Mr. Akelkok requested.[7] Another PTC was held on December 10, 2019, which was again continued at the defense's request. Mr. Akelkok noted his lack of consent to Mr. Lesch's decision to continue the PTC. The court explained to Mr. Akelkok that continuances toll time calculated under Rule 45 and scheduled a representation hearing.[8] Mr. Akelkok asked to represent himself at the representation hearing, but that request was denied and the continued PTC remained as set.[9]

Another PTC was held on December 18, 2019 and continued until January 14, 2020 at the defense's request. On January 14, Mr. Lesch indicated he would file a motion for reconsideration of the court's order denying Mr. Akelkok the ability to proceed *pro se*. The court advised the defense that the motion would toll Rule 45, to which Mr. Akelkok, but not his attorney, objected.[10]

---

[4] AS 11.41.420(a)(1).

[5] AS 11.41.420(a)(3).

[6] AS 11.41.436(a)(2). The court previously explained that the three charges started as three separate cases, but have since been joined into one case. *Order on Defendant's Omnibus Motion*, issued Sept. 8, 2020.

[7] Pre-Trial Conference at 10:31:00 (Nov. 12, 2019).

[8] Pre-Trial Conference at 3:15:10 (Dec. 10, 2019).

[9] *Order Denying Defendant's Request for Self-Representation and Scheduling Pre-Trial Conference* (issued Dec. 16, 2019).

[10] Pre-Trial Conference at 9:42:49 (Jan. 14, 2020) (Although represented by counsel, Mr. Akelkok interjected by noting that the Speedy Trial Act has a 120-day limit on delay before trial. The court explained that a motion to reconsider delays trial by its nature, and therefore tolls Rule 45).

**Order Denying Defendant's Motion to Dismiss**
*State v. Akelkok*
Case No. 3DI-19-359CR
Page **2** of **12**

A second representation hearing was held on March 4, 2020 to address the defense's motion to reconsider. There, the court advised Mr. Akelkok that its decision would be held in abeyance until the court received the petition for self-representation that he wanted the court to review. The court received Mr. Akelkok's petition March 17, 2020 and issued its decision allowing Mr. Akelkok to proceed *pro se* on April 9, 2020.[11] A PTC was held on March 17, 2020 before Mr. Akelkok was allowed to proceed *pro se*. The PTC was continued to the next date and Mr. Lesch acknowledged that time is tolling under Rule 45.[12]

In March, the COVID-19 pandemic reached a level of emergency that prompted the Alaska Supreme Court to suspend all jury trials and toll time calculations under Rule 45.[13] Since then, the state of the pandemic has varied but remained severe enough to compel the Chief Justice to suspend jury trials and toll time calculations under Rule 45.[14] Presently, misdemeanor trials and class B and C felony trials have been authorized to resume on April 19, 2021 and June 14, 2021, respectively; class A and Unclassified felony trials may not resume until July 6, 2021.[15] Time has been tolled under Rule 45 until July

---

[11] *Order on Reconsideration* (issued Apr. 9, 2020).

[12] Pre-Trial Conference at 10:29:34 (Mar. 17, 2020).

[13] Supreme Court Order No. 1957, *Emergency Order re COVID-19: Relaxation and Suspension of Various Court Rules based on COVID-19 Pandemic* (issued Mar. 19, 2020, effective March 13, 2020).

[14] *Special Order of the Chief Justice No. 8130* (March 15, 2020); *Special Order of the Chief Justice No. 8131* (Mar. 19, 2020); *Special Order of the Chief Justice No. 8144* (May 11, 2020); *Special Order of the Chief Justice No. 8155* (June 15, 2020); *Special Order of the Chief Justice No. 8183* (Aug. 6, 2020); *Special Order of the Chief Justice No. 8194* (Sept. 24, 2020); *Special Order of the Chief Justice No. 8210* (November 13, 2020); *Special Order of the Chief Justice No. 8213* (November 25, 2020); *Special Order of the Chief Justice No. 8235* (Feb. 8, 2021); *Special Order of the Chief Justice No. 8242* (Mar. 1, 2021); *Special Order of the Chief Justice No. 8259* (Apr. 6, 2021). *See also Third District Presiding Judge Order No. 868* (Nov. 2020); *Third District Presiding Judge Order No. 881: Second Updated* (May 13, 2021).

[15] *Id.*

31, 2021, with additional time tolled to allow trial courts to address their inflated backlogs.[16] During the period that time has been tolled, Mr. Akelkok has orally objected to delays in holding his trial.[17] His written motion to dismiss for speedy trial violations was filed on May 4, 2021, which has been his only written assertion of his speedy trial right lodged in his case.

## II.    Applicable Law and Analysis

Article I, § 11 of the Alaska Constitution guarantees "[i]n all criminal prosecutions, the accused shall have the right to a speedy and public trial...."[18] This language is virtually identical to the Sixth Amendment of the Federal Constitution conferring the right to a speedy trial.[19] The purpose underlying the right to a speedy trial aims to prevent lengthy pretrial incarceration, preserve a defendant's ability to prepare an effective defense, and protect a defendant's liberty and mental health.[20] Article 1, § 11 broadly outlines the right to a speedy trial in Alaska. Rule 45 sets much narrower boundaries, but does not represent the limits of the constitutional right to a speedy trial.[21]

Rule 45 imposes a 120-day time limit to bring a criminal defendant's case to trial.[22] The time begins to run when the defendant is served with the charging document.[23] If new charges arising out of the same criminal episode are levied against the defendant, the date from which time began to run for the first charge remains the origin date for

---

[16] *Id.*
[17] Pre-Trial Conference at 12:09:00 (Apr. 15, 2021).
[18] Alaska const., art. 1, § 11.
[19] *State v. Wright*, 404 P.3d 166, 171 (Alaska 2017).
[20] *Id.* at 171-72 (citations omitted).
[21] *Id.* at 172. *See also Snyder v. State*, 524 P.2d 661 (Alaska 1974).
[22] Alaska R. Crim. P. 45(b).
[23] *Id.* at (c)(1).

**Order Denying Defendant's Motion to Dismiss**
*State v. Akelkok*
Case No. 3DI-19-359CR
Page **4** of **12**

calculations under Rule 45.[24] The time tolls when a defendant requests or does not oppose a continuance.[25]

    *a. Rule 45 Analysis*

Mr. Akelkok was served with the original charging document on August 23, 2019; therefore, Rule 45 starts to run on that day. Normally, Rule 45 would compel the State to prosecute Mr. Akelkok at trial within 120 day, by December 22, 2019. However, Mr. Akelkok's time stopped running on November 12, 2019, when defense counsel requested a continuance at his first PTC. At that point, 81 days had run under Rule 45. Mr. Akelkok, through counsel, requested four additional continuances at the next four PTCs, continuing the matter to April 14, 2020.

On March 19, 2020, the Alaska Supreme Court suspended all jury trials and tolled time calculations under Rule 45.[26] Time has since been tolled through July 31, 2021.[27] Given that Mr. Akelkok's 120 days did not expire before the pandemic compelled tolling trial time calculations, no Rule 45 violation exists.

    *b. Constitutional Right to a Speedy Trial Analysis*

In addition to analyzing his Rule 45 calculation, the court must analyze whether Mr. Akelkok was denied his constitutional right to a speedy trial. The United States Supreme Court announced the test for evaluating speedy trial claims brought under the federal constitution in *Barker v. Wingo*.[28] The Alaska Supreme Court formally adopted

---

[24] *Id.* at (c)(3).
[25] *Id.* at (d).
[26] *Supra*, n. 13.
[27] *Supra*, n. 14.
[28] 407 U.S. 514, 531 (1972).

**Order Denying Defendant's Motion to Dismiss**
*State v. Akelkok*
Case No. 3DI-19-359CR
Page **5** of **12**

this test for speedy trial claims arising under the Alaska constitution in 2017.[29] "Under the speedy trial standard, if the defendant can show a delay of sufficient duration to be presumptively prejudicial, the four-factor balancing test is triggered."[30] The State then bears the burden to prove that the reason for the delay is valid.[31] When other factors weigh heavily against the state, prejudice may be presumed rather than proven.[32] Alaska Courts have found delays exceeding fourteen months to be presumptively prejudicial.[33] Since Mr. Akelkok was arrested and first served with the charging document, almost twenty-two months have passed. Therefore, the balancing test is triggered.

Once triggered, the balancing test requires weighing: 1) the length of the delay before a defendant faces trial; 2) the reason for the delay; 3) the defendant's assertion of their speedy trial right; and 4) the prejudice to the defendant.[34] The factors are related and must be considered together.[35] No one factor is necessary or sufficient to dispose of a speedy trial claim.[36] However, the first factor plays a dual role; it triggers the inquiry and is relevant to the ultimate conclusion.[37]

---

[29] *State v. Wright*, 404 P.3d at 178. *See also State v. Mouser*, 806 P.2d 330 (Alaska App. 1991) (employing the *Barker* test to a speedy trial claim under the Alaska Constitution).
[30] *Id.* at 177.
[31] *Id.*
[32] *Id.* (citing *Mouser*, 806 P.2d at 342).
[33] *See Rutherford v. State*, 486 P.2d 946 (Alaska 1971); *see also Mouser*, 806 P.2d 330 (Alaska App. 1991).
[34] *Wright*, 404 P.3d at 178 (citing *Barker*, 407 U.S. at 530).
[35] *Id.*
[36] *Id.*
[37] *Id.*

**Order Denying Defendant's Motion to Dismiss**
*State v. Akelkok*
Case No. 3DI-19-359CR
Page **6** of **12**

### 1) Length of Delay

Factor one—the length of delay before trial—weighs in favor of Mr. Akelkok. Almost two years have passed since Mr. Akelkok was arrested. He has been incarcerated ever since. The length of delay is extensive and, accordingly, presumptively prejudicial.

### 2) Reason for Delay

Factor two considers the reason for delay, which weighs in favor of the State. The State has never requested a continuance. Mr. Akelkok, although now *pro se*, was represented by counsel who requested continuances at five PTCs. Each continuance was made in an effort to perform legal work sought by Mr. Akelkok. Furthermore, Mr. Akelkok's filing of a motion to reconsider also tolled his time, which was acknowledged on record. Therefore, the period of delay preceding March 2020 is attributable to the defendant. However, the time since March 2020—approximately one calendar year—is mainly attributed to the COVID-19 pandemic.[38]

On March 11, 2020, the World Health Organization declared the coronavirus a global pandemic.[39] The coronavirus is "a respiratory disease that can result in serious illness or death and can spread from person to person."[40] Considering this unprecedented danger, the Alaska Supreme Court suspended jury trials to reduce the opportunity to

---

[38] Mr. Akelkok has also filed ten motions since Apr. 2020, each of which would have otherwise tolled Rule 45.

[39] Supreme Court Order No. 1957, *Emergency Order re COVID-19: Relaxation and Suspension of Various Court Rules based on COVID-19 Pandemic* (issued Mar.19, 2020, effective Mar. 13, 2020).

[40] *Id.*

spread the virus. On that same day, Governor Dunleavy issued a Public Health Disaster Emergency[41] and President Trump declared a National Emergency shortly thereafter.[42]

The Chief Justice has routinely monitored the pandemic's effect on Alaska and the rest of the country to ensure up-to-date facts inform the decisions on whether to allow trials to proceed. In June, the illness case count in Alaska was high.[43] Public health officials advised the court system that social distancing and mask wearing, along with other precautions, could help mitigate potential spread in the courtroom.[44] However, almost all courts in Alaska "do not have adequate space to safely accommodate a public audience or a large jury selection assembly."[45]

The Chief Justice continued to monitor the severity of the pandemic. In August 2020, the illness continued to spread across the state, prompting the trial suspension to be extended again.[46] Near the end of September, cases were still high, but the Chief Justice allowed scheduling misdemeanor trials in locations where the illness spread was subsiding.[47] However, in November, misdemeanors were again suspended when case counts began escalating to newer highs,[48] which also prompted Governor Dunleavy to order all Executive branch employees to work from home.[49]

---

[41] *Special Order of the Chief Justice No. 8130* (Mar. 15, 2020).
[42] *Id.*
[43] *Special Order of the Chief Justice No. 8155* (June 15, 2020).
[44] *Id.*
[45] *Id.*
[46] *Special Order of the Chief Justice No. 8183* (Aug. 6, 2020).
[47] *Special Order of the Chief Justice No. 8194* (Sept. 24, 2020).
[48] *Special Order of the Chief Justice No. 8210* (Nov. 13, 2020).
[49] *Special Order of the Chief Justice No. 8213* (Nov. 25, 2020).

**Order Denying Defendant's Motion to Dismiss**
*State v. Akelkok*
Case No. 3DI-19-359CR
Page **8** of **12**

November and December 2020 were months of widespread illness transmission in all regions in Alaska,[50] and by February 2021, a new and more contagious strain of the coronavirus was discovered in Alaska.[51] But some communities recovered from the high infection rate, and the Chief Justice allowed Presiding Judges to authorize jury trials as public health advisements allowed.[52] Once cases began to moderately decline, the Chief Justice created a schedule to return to jury trials: misdemeanors could proceed first, with class B and C felonies next, and class A and Unclassified felonies following behind.[53] The schedule reflects the feasibility of complying with safety precautions in the courtroom, which is tied to the complexity of each category of cases.[54]

When faced with the coronavirus pandemic, the Alaska Court System routinely monitored the severity and took necessary precautions based on public health advisements. As the pandemic worsened, the court was forced to suspend jury trials to avoid becoming a vector for the virus. But as case counts and infection rates dropped, the court announced procedures for reintroducing jury trials. If some regions were reporting lower infection rates than others, the presiding judges could authorize jury trials.

Now, the court system is in the middle of reinstituting jury trials. The delay is nearly over, and trial courts are empaneling juries with fully instituted safety precautions. Suspending jury trials was a drastic measure to address a drastic danger to Alaskan communities. Criminal defendants across the state have felt the impact of the trial delays.

---

[50] *Id.*

[51] *Special Order of the Chief Justice No. 8235* (Feb. 8, 2021).

[52] *Id.*

[53] *Special Order of the Chief Justice No. 8242* (Mar. 1, 2021); *Special Order of the Chief Justice No. 8259* (Apr. 6, 2021).

[54] *Third District Presiding Judge Order No. 881: Second Updated* (May 13, 2021).

Order Denying Defendant's Motion to Dismiss
*State v. Akelkok*
Case No. 3DI-19-359CR
Page 9 of 12

Here, the State neither requested nor caused any delay in Mr. Akelkok's trial. Therefore, this factor weighs in the State's favor. In addition to finding this factor weighs in favor of the State, the court further finds that the second factor—during these unprecedented times of the COVID-19 pandemic—carries a significant amount of weight.

### 3) Defendant's Assertion of Right to a Speedy Trial

Factor three measures the defendant's assertions of his speedy trial right. Mr. Akelkok did not orally assert his right to a speedy trial until April 2021, after the Chief Justice issued the eleventh order suspending jury trials and over a year after the first suspension order went into effect. Throughout the pandemic, Mr. Akelkok filed many written motions, but did not assert his right to a speedy trial in writing until very recently, on May 4, 2021. The delay in asserting his right leads the court to find that this factor weighs in favor of the State.

### 4) Prejudice to the Defendant

The fourth and final factor considers the prejudice to the defendant. Although nearly two years have passed, the preceding factors do not weigh heavily against the State. Therefore, prejudice must be proven, not presumed. Prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."[55] The United States Supreme Court has identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."[56]

---

[55] *Barker*, 407 U.S. at 532.
[56] *Id.*

**Order Denying Defendant's Motion to Dismiss**
*State v. Akelkok*
Case No. 3DI-19-359CR
Page **10** of **12**

"Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[57]

Mr. Akelkok does not allege prejudice in his motion to dismiss. He does generally claim that such a long delay can spur anxiety and impact the memories and availability of witnesses. But he does not articulate how such possibilities impact him or impair his ability to assert an effective defense. Seemingly, lack of witness memory or availability may help Mr. Akelkok, the accused. Lack of witnesses or witness memory would likely handicap the State in its attempt to prove Mr. Akelkok's guilt beyond a reasonable doubt.

Further, the court acknowledges that the unprecedented delay in trials due to the COVID-19 pandemic has caused lengthy pretrial incarcerations and has likely contributed to anxiety and concern of defendants while cases are pending. But these issues are not unique to Mr. Akelkok. The suspension of jury trials has been applied to all defendants statewide and has not singled out Mr. Akelkok in his attempts to move forward with trial. The lengthy pretrial incarceration is not overly oppressive considering the health risks involved in gathering large number of potential jurors, the seriousness of Mr. Akelkok's charges, and his criminal history.[58] Therefore, the prejudice associated with the delay in this case weighs in favor of the State.

Although much time has passed, criminal defendants across the entire state have faced significant delays due to the pandemic. And in this case, some of the delay can be attributed to Mr. Akelkok, but none to the State. Further, Mr. Akelkok did not formally raise

---

[57] *Id.*

[58] *See generally Karr v. State*, 459 P.3d 1183 (Alaska App. 2020) (instructing trial courts, when setting bail, to consider concerns about the defendant's appearance and protection of the victim and community "in light of the COVID-19 pandemic").

his right to a speedy trial until very recently, and he has not alleged sufficient facts to show he is prejudiced by the delay. Therefore, the State has shown that the delay in taking Mr. Akelkok's case to trial is justified, and does not violate Mr. Akelkok's constitutional right to a speedy trial.

### III.    Conclusion

Accordingly, Mr. Akelkok's motion to dismiss is hereby DENIED.

IT IS SO ORDERED

Dated this 22ᴺᴰ day of June 2021 in Dillingham, Alaska.

I certify that on ___6|22|21___
a copy of this document was sent/faxed to
the attorneys of record or other

_____
Clerk

_____
Christina L. Reigh
Superior Court Judge

**Order Denying Defendant's Motion to Dismiss**
*State v. Akelkok*
Case No. 3DI-19-359CR
Page **12** of **12**

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT DILLINGHAM

State of Alaska,
                                        Plaintiff,

vs.                                                     CASE NO: 3DI-19-00359CR

Constantine Quisto Akelkok,
                                        Defendant.
                                                        **TEMPORARY ORDER**

DOB: 12/06/1984          ATN: 116765163
OLN/ID ST: 6706336 - AK  APSIN: 6706336
DOV: 07/20/2019
☒ Victim Case (if known)   ☐ No Pretrial Report
CHARGE(s):
  Indicted 001: AS11.41.420(a)(3): Sex Assault 2- Penetrate Incap Victim
  Indicted 003: AS11.41.436(a)(2): Sex Abuse Minor 2-Contact, Vict Undr 13
  Indicted 002: AS11.41.410(a)(1): Sex Assault 1- Penetrate w/o Consent
☐ Defendant is not in custody on this charge.

### INSTRUCTIONS TO JAIL

☐ RELEASE. It is ordered that the above-named defendant be released:
  ☐ OWN RECOGNIZANCE (O.R.).
☐ BONDS. Defendant to post the following bonds:
  Offenses before 7/9/2019
    ☐ Appearance: $ _____ ☐unsecured ☐10% cash ☐100% cash ☐100% cash or bail bond
    ☐ Performance: $ _____ ☐unsecured ☐ _____ % cash ☐100% cash
    ☐ [Monetary Bail] The court finds by clear and convincing evidence that own recognizance release,
      or unsecured bonds, or nonmonetary conditions will not ensure the defendant's appearance, or
      the safety of the victim, other persons, or the community.
  Offenses on or after 7/9/2019
    ☒ Appearance: $ 20,000 ☐unsecured ☐10% cash ☒100% cash ☐100% cash or bail bond
    ☒ Performance: $ 60,000 ☐ 100% cash
☐ COMMITMENT. Defendant shall be held in custody pending receipt of formal judgment. Defendant
  was sentenced as follows: _____
☒ TRANSPORTATION (as necessary)_____
☒ FINGERPRINT BEFORE RELEASE.
☐ See addendum for conditions of release.  ☐ All previous conditions remain in effect.

### NEXT COURT APPEARANCE

DATE: 11|12|19 _____ TIME: 9:30 _____ PLACE: ☒ Dillingham ☐ _____
☐ Arraignment   ☐ Sentencing   ☐ Pre-Indict. Hearing   ☐ Adjudication   ☒ Pre-Trial Conf.
☐ Bail Hearing  ☐ Rep. Hearing ☐ Trial Call           ☐ Trial ☐ _____

Before ☒ Judge Reigh   ☐ Magistrate Judge O'Connor ☐ _____

☒ Transport to Dillingham not required. Defendant may appear ☒by phone ☐ by counsel

### SCHEDULING MATTERS

TRIAL: Week of _____   RULE 45 EXPIRES: Dec. 21, 2019
_____
October 15, 2019                                        _____
     Effective Date                                      Superior Court Judge
                                           Type or Print Name: Christina L Reigh

I certify that on 10/16/19 this document and its attachments were distributed to:
☐ DPD ☒ Def/Atty ☒ DA ☐ FAST ☐ PED ☒ Other: _GCCC_
Clerk: RK

CR-200Dill (7/19)
Temporary Order (DILLINGHAM)

## ADDENDUM TO TEMPORARY ORDER (Form CR-200 DILL)

☐ PUBLIC DEFENDER AGENCY is appointed. Contact: P.O. Box 929, Dillingham, AK 99576. **Phone:** 907-842-4582. **Toll free:** 800-478-4582. **Fax:** 842-4782. Defendant shall contact the attorney **within the next five days.**

☐ PED SUPERVISION. The defendant is ordered to supervision by a Pretrial Enforcement Division (PED) officer during the pretrial period per AS 33.07. Maintain contact with your PED officer, if appointed one, and follow all PED officer instructions.
    ☐ No EM required. Defendant to call 1-907-707-1801 within 24 hours of release for instructions.
    ☐ EM ordered. Defendant shall report to the Dillingham Police Department for EM equipment. Report ☐ immediately. ☐ within 24 hours of release. ☐ _____.
        ☐ Alcohol Monitoring        ☐ House Arrest
        ☐ Curfew: _____
        ☐ Location Restrictions: _____

☐ THIRD PARTY CUSTODIAN.
    ☐ The defendant is placed in the custody of: _____
    ☐ [If offense before 7/9/2019] The court finds that PED supervision is unavailable in the defendant's location; and no secured bond was ordered; and no other conditions of release can reasonably ensure the defendant's appearance and the safety of the victim, other persons, and the community.
    ☐ Custodian is **not** required at time of release. The defendant must go **directly** to the nearest airport for flight to _____. Custodian must meet flight and notify police if the defendant fails to arrive (☐ or has alcohol on his/her breath).

## RELEASE CONDITIONS

Effective immediately, the defendant shall comply with the conditions marked below:
☒ Obey all court orders and all federal, state, and local laws. Appear in court when ordered.
☒ Maintain contact with your attorney, if represented.
☒ Tell your attorney or the court within 24 hours after changing residences.
☒ Tell your attorney or the court of any new phone or email by the next business day.
☒ Do not leave ☒ Alaska ☐ _____ ☐ without written court permission.
☒ Do not consume ☒ alcohol ☐ illegal drugs, or enter any place where they are sold.
    ☐ Be tested ☐ as recommended by PED or ☐ _____
☒ Do not directly or indirectly contact <u>K.F., K.J., T.K.</u>
☒ Do not return to <u>KF, KJ, TK residence</u> _____
☒ Do not talk about this case with any victims or witnesses named in the complaint.
☒ Do not be present where ☒ alcoholic beverages are available ☐ except _____. ☐ One civil standby is authorized.
☒ Take a portable breath test (PBT) ☒ submit to a search of defendant's person, personal property, residence and vehicle as requested by any peace officer who has probable cause to believe that the defendant consumed alcohol or illegal drugs.
☐ Do not operate any motor vehicle ☐ unless properly licensed and insured ☐ at any time.
☒ Comply with ☒ any protective orders issued against the defendant
    ☐ probation or release conditions in case number(s) _____
☐ Observe curfew between the hours of _____
☐ _____

## ASSIGNMENT OF JUDICIAL OFFICERS

This case is assigned to ☒ Judge Reigh ☐ _____ for trial/adjudication.
☐ Magistrate Judge O'Connor ☐ _____ is assigned for pre-trial matters.

## DEFENDANT'S ACKNOWLEDGEMENT

I reviewed this order and I promise to appear at all scheduled hearings and to comply with all the release conditions in this order. I understand that if I fail to do so, I may be arrested without a warrant, and the court may enter a judgment against me for the amount of the bond posted and any unsecured bond.

Signature: _____    Date: _____

Address: _____    Phone: _____

Defendant: Constantine Quisto Akelkok

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT DILLINGHAM

STATE OF ALASKA,                        )
                                        )
            Plaintiff,                  )
    vs.                                 )
                                        )
CONSTANTINE AKELKOK,                    )
                                        )
            Defendant.                  )
                                        )
DOB: 12/03/1984                         )
                                               Case No. 3DI-19-359CR

PRETRIAL ORDER
(FELONY)

1. <u>Assignment</u>. This case is assigned to Superior Court Judge Christina Reigh.

2. <u>Scheduling</u>. The following proceedings are calendared:
   Cr. R. 12(b) Motions and <u>Daubert</u> Motions due: ___11/29/2019___
   PTC: 11/12/2019
   Trial: Week of 12/02/2019

The defendant must be personally present at these proceedings. Counsel are responsible for avoiding, and giving timely notice of, scheduling conflicts. In the event a party seeks to participate in a hearing by telephone, that party or counsel needs to communicate with the other side and the court. See also Rule 38.1. No motion needs be filed to appear by telephone in a non-evidentiary hearing.

3. <u>Rule 45 Expiration</u>. The projected Rule 45 expiration date is ___12/21/2019___. Parties have 8 days to object to this calculation.
   10 (rau)

4. <u>Affidavits of Counsel</u>. It is <u>not</u> necessary to attach affidavits of counsel saying that you believe factual assertions are true, etc. A footnote may be used for this purpose.

5. <u>Continuance, Extensions of Time, and Deviations</u>. None will be granted except upon motion demonstrating good cause and filed in advance of any deadline or deviation. Motions for continuance of trial must be accompanied by a written waiver of criminal Rule 45 and consent by any third party

Felony Pre-trial Order
SOA v. CONSTANTINE AKELKOK
3DI-19-359CR
Page 1 of 2

custodians. The State's response must include the position of any victim of the crime charged.

6. Discovery, Motions, and Other Pretrial Matters. All deadlines, procedure and substantive requirements will be in accordance with applicable law and the Criminal Rules. Additionally, the following time requirements apply to disclosure of information which by law or court rule must be disclosed without request of the opposing party:

> Disclosure to the defendant by the 10th day after arraignment.
> Disclosure to the state by the 20th day after arraignment.

7. Motions in Limine and 404(b) Applications. Unless expressly requested by a party in writing, the Court will hold all motions in limine or 404(b) applications in abeyance until the parties have announced the case is ready for trial.

8. Notice of Experts. This court has precluded testimony where the notice of expert failed to comply with Rule 16. Notice of those subjects on which an expert might testify is required.

9. Jury Instructions. The prosecution's proposed jury instructions must be filed and served by one business day before the start of trial. The defendant's proposed jury instructions must be filed by one business day before the start of trial, and served on the prosecution immediately after the prosecution rests.

10. Use of Information. Counsel and defendant are reminded of the requirements of Criminal Rule 16(d) (custody and use of information), and AS 12.61.010-900 (rights of victims), particularly the duties of counsel, limitations on disclosure of information, and procedure for victim contact.

11. Compliance. Failure of counsel or the defendant to comply with this order or court rules may result in sanctions as provided by Criminal Rule 50.

Dated the 16th day of _October_, 2019 in Dillingham, Alaska

Christina Reigh
Superior Court Judge

**Felony Pre-trial Order**
SOA v. CONSTANTINE AKELKOK
3DI-19-359CR
Page 2 of 2

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT DILLINGHAM

STATE OF ALASKA,                    )
                                    )
                Plaintiff,          )
                                    )
        v                           )
                                    )
CONSTANTINE QUISTO AKELKOK,         )
                                    )
                Defendant.          )
                                    )

Case No. 3DI-19-00359CR

## MOTION TO SUPPRESS

The Defendant, Constantine Quisto Akelkok, without aid of counsel and benefits of counsel, moves this Honorable Court to suppress the Search Warrant, No. 3AN-19-2369SW. Former Dillingham Police Department officer "Rodney Ethridge" applied for a search warrant by telephone on August 20, 2019 before Magirstrate Doherty at Anchorage, to search Akelkok's person.

The Defendant was allegedly arrest and charged with sexual assault in the second degree on August 20, 2019. Defendant moves to suppress the search warrant because former (D.P.D) officer Ethridge, 1) the search warrant lacked probable cause 2) the information contained in the warrant was the fruit of an illegal search of the Defendant and 3) Magistrate Doherty questioned officer Ethridge's investigation and asked Ethridge "where is the criminal offense" multiple times.

Alaska's Constitution Article I, section 14 provides that no warrants shall issue, but upon probable cause and particularly describing the place to be searched, and the persons or things to be seized. The Defendant's indication the warrant process was being abused, valid portions of a warrant is severable from invalid portions for which there was no probable cause to illegal seizure, arrest, and search of Akelkok's person.

The search applied by (D.P.D) officer Ethridge and the information present to Magistrate Doherty was the fruit of an illegal search of the Defendant. The alleged victim K.F. when interviewed by (former D.P.D) officer Etheridge and (D.P.D)

-1-

CONSTANTINE QUISTO AKELKOK AKA/IS #40JU20
Goose Creek Correctional Center
22301 West Alsop Road
Wasilla, Alaska 99623

officer Susan Newman testified that she (K.F.) was not sexually assault and expressed mutual consent and that is was not forced. That she liked the Defendant and the Defendant liked her. During this questioning the alleged witness K.F., officer Etheridge questioned his arrest and stated "What to do now?"

Defendant believes this evidence presents a lack of probable cause or no probable cause to arrest the Defendant by (former D.P.D.) Etheridge, and an illegal search of Akelkok's person. There is no evidence of Akelkok's search at the police station.

When former D.P.D. officer Etheridge submitted his request for a search warrant by telephone to Magistrate Doherty at Anchorage. Etheridge testified to no probable cause was submitted, log into evidence, no police incident reported, when applying for the search warrant. During Etheridge's testimony, Magistrate Doherty asked Etheridge, where is the criminal offense, not once but twice. Etheirdge failure to present probable cause for the search warrant is invalid and violated Akelkok's Alaska Constitution Article I, section 14 and United States Constitution 4th Amendment, because Etheridge had no probable cause to search and seizure Akelkok's person.

Defendant moves this Honorable Court to grant, Defendant's motion to suppress for the above evidence provided because of (former D.P.D.) officer Rodney Etheridge failure to provide Magistrate Doherty with no probable cause to arrest, seizure, and search the Defendant Constantine Quisto Akelkok's person without probable cause.

Submitted this __2 7th__ day of October, 2021

Constantine Quisto Akelkok
Defendant, Pro Se

Constantine Quisto Akelkok ACOMS #485026
Goose Creek Correctional Center
22301 West Alsop Road
Wasilla, Alaska 99623

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 25 of 53

FILED IN THE ALASKA TRIAL COURTS ON 11/24/2021

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT DILLINGHAM

STATE OF ALASKA,       )
                  Plaintiff,       )
     vs.       )
                           )
CONSTANTINE AKELKOK,       )
               Defendant.       )       Case No. 3DI-19-00359CR
                         )

## ORDER DENYING MOTION TO SUPPRESS

### I.    Introduction

Defendant Constantine Akelkok filed a *Motion to Suppress* on October 27, 2021, arguing that search warrant 3AN-19-2369SW was not supported by probable cause. The State opposed the motion in writing and the defendant did not file a reply brief. The court reviewed the search warrant and the audio from the hearing on July 20, 2019[1] to make the following ruling.

### II.    Facts

Sergeant Rodney Etheridge sought a search warrant to collect evidence from Mr. Akelkok's body on July 20, 2019. He testified by telephone before a Magistrate Judge in support of the request. The Dillingham Police Department had received an anonymous call that a man was trying to have sex with a woman while she was sleeping. Etheridge responded to the residence and found both doors to the home open. After he knocked and announced himself, he proceeded into the home where he observed the defendant on top of K.F. having sex on a couch. The officer told the defendant to get up and the officer addressed K.F., but K.F. was unresponsive for approximately one minute. Her

---

[1] Def. Exh. A.

**Order Denying Motion to Suppress**
*SOA v. Akelkok*
3DI-19-00359CR
Page **1** of 4

INMATE COPY

FILED IN THE ALASKA TRIAL COURTS ON 11/24/2021

eyes were open, but she did not respond to the officer in any way. She then closed her eyes and appeared to fall asleep. The officer removed the defendant from the home and placed him in the patrol vehicle.

The officer then went back into the home and woke up K.F. She acknowledged that she had wanted to have sex with the defendant. She remembered touching the defendant, being naked, and intending to have sex with him. K.F. contradicted herself by first saying she did not remember having sex with the defendant, but then said that she did remember having sex with him. The officer described K.F. as calm and not upset, but appeared to be incapacitated due to drinking to the point of intoxication. The Magistrate Judge questioned the officer about how the encounter could amount to a crime if K.F. had consented to sexual contact. Ultimately, however, the Magistrate Judge found there was sufficient evidence presented to grant a search warrant to collect evidence of sexual assault in the second degree, AS 11.41.420(a)(3)(B), for engaging in sexual penetration with an incapacitated person. The Magistrate Judge relied on K.F. "waffling" between whether she knew she had sex or not when making the probable cause determination. The Magistrate Judge authorized the search to include Mr. Akelkok's head and pubic hair; buccal and genital swabs; and unclothed photographs.

### III. Law and Analysis

Probable cause to search a person exists where reliable information is presented in sufficient detail to persuade a reasonably prudent person that criminal activity or evidence of criminal activity will be found in the place or on the person to be searched.[2]

---

[2] *State v. Chapman*, 783 P.2d 771, 772 (Alaska App. 1989).

**Order Denying Motion to Suppress**
*SOA v. Akelkok*
3DI-19-00359CR
Page **2** of **4**

INMATE COPY

FILED IN THE ALASKA TRIAL COURTS ON 11/24/2021

When a magistrate issues a search warrant, the court "must give great deference to [the] decision and must resolve doubtful or marginal cases by upholding the warrant."[3] The trial court reviews the magistrate's decision by applying an abuse of discretion standard.[4]

Second-degree sexual assault includes situations when a person engages in sexual penetration with a person who is incapacitated.[5] A person is incapacitated when they are "temporarily incapable of appraising the nature of one's own conduct or physically unable to express unwillingness to act."[6] The statutory definition of "incapacitated" includes persons who are asleep.[7]

Viewing the evidence in the light most favorable to upholding the warrant, the information provided to the Magistrate Judge is sufficient to support a probable cause finding. The officer's testimony was reliable because it was based on his personal observations, which mirrored the anonymous caller's report. The officer walked in on Mr. Akelkok actively engaging in intercourse with K.F. K.F. was unresponsive despite the officer announcing his presence, going into the room, directing Mr. Akelkok to move, and addressing K.F. directly. Her eyes were open, but did not respond to either the officer's presence or his questions. After approximately one minute of not responding with her eyes open, she closed her eyes and appeared to fall asleep. At the moment that the officer observed Mr. Akelkok engaging with K.F., it was reasonable to believe that she was incapacitated. She was incapable of even acknowledging the officer's presence,

---

[3] *State v. Conway,* 711 P.2d 555, 557 (Alaska App. 1985).
[4] *State v. Bianchi,* 761 P.2d 127, 130 (Alaska App. 1988)
[5] AS 11.41.420(a)(3)(B).
[6] AS 11.41.470(2).
[7] *King v. State,* 978 P.2d 1278, 1281 (Alaska App. 1999).

**Order Denying Motion to Suppress**
*SOA v. Akelkok*
3DI-19-00359CR
Page **3** of **4**

INMATE COPY

FILED IN THE ALASKA TRIAL COURTS ON 11/24/2021

therefore she did not have an ability to appraise the nature of her own conduct or to express her unwillingness to act. In addition, once the officer was able to wake her up, she lacked a clear awareness of what happened with Mr. Akelkok—she wavered between not remembering whether they had sex and remembering that they had had sex.

K.F.'s disclosure that she had wanted to have sex with Mr. Akelkok does not affect the state of unawareness she was in while Mr. Akelkok was having sex with her. Incapacitation can be temporary in nature, and the information provided by the officer was sufficiently reliable to support a probable cause finding that she was incapacitated during intercourse. The officer's testimony further supports a finding that a search of Mr. Akelkok's person—including hairs, swabs, and photographs—would lead to evidence of criminal activity being found on him, i.e., evidence of engaging in sexual penetration.

**IV. Conclusion**

The evidence provided to the Magistrate Judge was sufficient to support a finding of probable cause to search Mr. Akelkok. Therefore, the *Motion to Suppress* is hereby DENIED.

IT IS SO ORDERED.

Dated this 24th day of November, 2021.

Christina Reigh
Superior Court Judge

INMATE COPY

**Order Denying Motion to Suppress**
*SOA v. Akelkok*
3DI-19-00359CR
Page **4** of **4**

Exempt from VRA while sealed.
Screen for VRA when public.

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT _____ANCHORAGE_____

Amended ※

**SEARCH WARRANT**

NO. **3AN-19-2369SW**

Relates to case number(s):
Log: 7/20/19 @ 12:59 am, Room 1
@ 1:29 AM

TO: Any Peace Officer

Having received information under oath from <u>Rodney Etheridge (Dillingham PD)</u>

given ☐ in person    ☒ by telephone    ☐ by original affidavit    ☐ by faxed affidavit

I find probable cause to believe that

※ corrected name| BoB

☒ on the person of _____ Constantine Akelkok _____ (DOB 12/06/1984)

☐ on the premises known as _____ at (city and state) _____, there is now being concealed property, namely:

Head hairs
Pubic hair combings
Genital swabs
Hand swabs
Buccal swab
Photographs unclothed

AS 12.35.010-.120
Crim. R. 37

SEARCH WARRANT NO. <u>3AN-19-2369SW</u>

and that such property (see AS 12.35.020)

| ☒ | 1. | is evidence of the particular crime(s) of <u>Sexual Assault 2</u>  . |
| ☐ | 2. | tends to show that _____ |
|   |    | committed the particular crime(s) of _____. |
| ☐ | 3. | is stolen or embezzled property. |
| ☐ | 4. | was used as a means of committing a crime. |
| ☐ | 5. | is in the possession of a person who intends to use it as a means of committing a crime. |
| ☐ | 6. | is one of the above types of property and is in the possession of |
|   |    | _____ , to whom |
|   |    | _____ delivered it to conceal it. |
| ☐ | 7. | is evidence of health and safety violations. |

YOU ARE HEREBY COMMANDED to search the person or premises named for the property specified, serving this warrant, and if the property be found there, to seize it, leaving a copy of this warrant, and all supporting affidavits, and a receipt of property taken. You shall also prepare a written inventory of any property seized as a result of the search pursuant to or in conjunction with the warrant. You shall make the inventory in the presence of the applicant for the warrant and the person from whose possession or premises the property is taken, if they are present, or in the presence of at least one credible person other than the warrant applicant or person from whose possession or premises said property is taken. You shall sign the inventory and return it and the warrant within 30 days after this date to this court as required by law.

YOU SHALL SERVE THIS WARRANT:

☐     between the hours of 7:00 a.m. and 10:00 p.m.

☐     between the hours of _____ ☐ a.m. ☐ p.m.

        and _____ ☐ a.m. ☐ p.m.

☒     at any time of the day or night.

AS 12.35.010-.120
Crim. R. 37

SEARCH WARRANT NO. 3AN-19-2369SW

YOU SHALL MAKE THE SEARCH:

☒ Immediately.

☐ within _____ ☐ days ☐ hours.

☐ within 30 days.

☐ contingent upon the happening of the events expected to occur as set forth in the supporting testimony, specifically _____

From the information provided in the application for the warrant, I find compelling reasons to postpone delivery of this notice beyond the time set in Criminal Rule 37(b).[1] Therefore, this notice must be given:

☒ Immediately upon seizure of the property.
☐ within a reasonable period, not to exceed 90 days from this date.
☐ within _____ days, which I have determined to be a reasonable time in this case.

If you cannot deliver the notice within this time limit, you must apply to the court for an extension of the time limit. Your sworn application must show good cause for the extension.

(SEAL)

_____7/20/19_____
Date

_____1:18_____ ☒ a.m. ☐ p.m.
Time Issued
to Amended at 1:32 AM

_____
Judge/Magistrate Judge

_____Doherty_____
Type or Print Name

TELEPHONIC SEARCH WARRANTS. If this search warrant was issued by telephone, the judicial officer named above has orally authorized the applicant for this warrant to sign the judicial officer's name. AS 12.35.015(d).

Time Warrant Served: _____

---

[1] *Jones v. State*, 646 P.2d 243, 249 (Alaska App. 1982). Reasons for postponement include, but are not limited to: avoiding jeopardizing a confidential informant's safety, avoiding impairing the informant's investigative efforts in other cases, and allowing time for follow-up investigations in this case.

Page 3 of 4
CR-706wt (5/15)
SEARCH WARRANT

AS 12.35.010-.120
Crim. R. 37



# Dillingham Police Department

## Incident Report

## Incident: DP19002623

| | |
|---|---|
| **Incident Type:** | Sexual Assault [SEXS] |
| **Incident time:** | 07/19/2019 23:44 - |
| **Reported time:** | 07/19/2019 23:44 |
| **Incident location:** | 3155 SQUAW CREEK ROAD, DILLINGHAM, Unorganized Borough AK USA 99576 (Beat/zone: RDAA, DILLINGHAM) |
| **Incident status:** | Closed referred to DAO |
| **Summary:** | AN ANONYMOUS MALE REPORTED HE PICKED UP A ▮YEAR OLD GIRL K▮▮▮▮ FROM HER HOME ON SQUAW CREEK. COMP STATED K▮▮▮ SAID CONSTANTINE AKELKOK ATTEMPTED TO RUB K▮▮▮ F▮▮▮LEG AND PRIVATE AREAS TRYING TO MAKE SEXUAL CONTACT, K▮▮▮ALSO STATED AKELKOK PUSHED F▮▮▮DOWN AND SAID "DRINK WITH ME". COMP STATED HE DROPPED K▮▮▮ OFF AT HER AUNTS HOUSE ON KANAKANAK ROAD HER NAME IS WILLOW OLSEN. ATN 116 765 163 |

## Incident Activities/Offenses

- AS11.41.420(a)(3)(c) - SA 2nd - Knowingly Engage in Sexual Penetration with an Unaware Person

## Involved Persons/Organizations

### AKELKOK, CONSTANTINE QUISTO

| | | | |
|---|---|---|---|
| **Classification:** | Mentioned in report | | |
| **SID:** | AK6706336 | **DL:** | 6706336 AK |
| **Gender:** | Male | **DOB:** | 12/06/1984 |
| **Address:** | NEW HUD HOUSING ROAD, Complex: BACK SIDE OF AIRPORT, BLUE HOUSE 1ST ON LEFT EKWOK, Unorganized Borough AK USA 99580 (Beat/zone: RDAD, EKWOK) | | |
| **E-mail:** | | | |

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 33 of 53

| Telephone: | (Cellular phone) (907) 843-6474 | | | | |
|---|---|---|---|---|---|
| Height: | 5'10" | Weight: | 180lb | Build: | |
| Race: | Indian | Hair Color: | Brown | Eye Color: | Brown |

## ANONYMOUS, ANONYMOUS

| | | | | | |
|---|---|---|---|---|---|
| **Classification:** | Complainant | | | | |
| **SID:** | ▬ | **DL:** | | | |
| **Gender:** | Unknown | **DOB:** | | | |
| **Address:** | None | | | | |
| **E-mail:** | | | | | |
| **Height:** | | **Weight:** | | **Build:** | |
| **Race:** | Unknown | **Hair Color:** | Unknown or completely bald | **Eye Color:** | Unknown |

## DAVIDSON, JAROD EARL

| | | | | | |
|---|---|---|---|---|---|
| **Classification:** | Mentioned in report | | | | |
| **SID:** | ▬ | **DL:** | ▬ | | |
| **Gender:** | Male | **DOB:** | ▬ | | |
| **Address:** | None | | | | |
| **E-mail:** | | | | | |
| **Height:** | ▬ | **Weight:** | ▬ | **Build:** | |
| **Race:** | | **Hair Color:** | Brown | **Eye Color:** | Green |

 F▬, K▬

| | | | | | |
|---|---|---|---|---|---|
| **Classification:** | Mentioned in report | | | | |
| **SID:** | ▬ | **DL:** |  | | |
| **Gender:** | Female | **DOB:** | | | |
| **Address:** | None | | | | |
| **E-mail:** | | | | | |

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 34 of 53

**Telephone:** ██████████████

**Height:** ████ **Weight:** ████ **Build:**

**Race:** Indian **Hair Color:** Brown **Eye Color:** Brown

## KRUEGER, TORI ANN LYNAE

**Classification:** W tness

**SID:** ████████ **DL:** ████████

**Gender:** Female **DOB:** ████████

**Address:** None

**E-mail:**

**Telephone:** ████████████

**Telephone:** ████████████

**Height:** ████ **Weight:** ████ **Build:**

**Race:** **Hair Color:** Brown **Eye Color:** Hazel

## OLSON, WILLOW ALANA

**Classification:** Mentioned in report

**SID:** ████████ **DL:** ████████

**Gender:** Fe nale **DOB:** ████████

**Address:** █████████████████████
(Beat/zone: RHWF, GOLOVIN)

**E-mail:**

**Telephone:** ████████████

**Height:** ████ **Weight:** ████ **Build:**

**Race:** White **Hair Color:** **Blonde or strawberry** **Eye Color:** Blue

## WOOD, GREGORY JAMES

**Classification:** Witness

**SID:** ████████ **DL:** ████████

| | | | | | |
|---|---|---|---|---|---|
| **Gender:** | Male | **DOB:** | ████ | | |
| **Address:** | None | | | | |
| **E-mail:** | | | | | |
| **Telephone:** | ████████ | | | | |
| **Height:** | ██ | **Weight:** | ███ | **Build:** | |
| **Race:** | Indian | **Hair Color:** | Black | **Eye Color:** | Brown |

## Involved Property

- Photograph : Digital media / Evidence / Digital media PHOTOS
- Video recording : Other (see remarks) / Evidence / Other (see remarks) VIDEO
- P19029975 / Test kit : Sexual Assault Response Team (SART) / Evidence / Sexual Assault Response Team (SART) SART KIT
- P19029976 / Test kit : Sexual Assault Response Team (SART) / Evidence; Seized with warrant / Sexual Assault Response Team (SART) SART KIT
- P19029977 / DNA : Clothing / Evidence / Clothing SHIRT
- P19029979 / DNA : Buccal swab / Evidence / Buccal swab BUCCAL SWAB
- P19029980 / DNA : Clothing / Evidence / Clothing PANTS

## Involved Addresses

- 3155 SQUAW CREEK ROAD / Incident location / DILLINGHAM, Alaska, USA 99576 (Beat/zone: RDAA, DILLINGHAM)

## Involved Comm Addresses

- (Cellular phone) ████████ / Originating

## Involved Officers

- Call taker / #CJO0 ONEY, CONNOR J / DIL
- Reporting unit / #DILU DILLINGHAM POLICE PATROL / DIL
- Reporting officer / #SMN0 NEWMAN, SUSAN M / DIL
- Assisting officer / #RKE0 ETHERIDGE, RODNEY K / DIL

## Reports

### Victim report

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 36 of 53

| Subject: | F▪▪▪▪, K▪▪▪▪ / Mentioned in report / DOB: ▪▪▪▪▪ | Gender: |
|---|---|---|
| | Female ▪ | |

| | | | |
|---|---|---|---|
| **Author:** | #SMN0 NEWMAN, S. | **Report time:** | 07/22/2019 06:06 |

**Offender/Offense:**

| **Victim services notified:** | **Victim services accepted:** |
|---|---|

**Victim services notified by:**

**Victim notified:**

| **Sexual assault kit:** | No | **Time:** |
|---|---|---|

---

## General report

| **Author:** | #SMN0 NEWMAN, S. | **Report time:** | 08/17/2019 10:43 |
|---|---|---|---|

**Narrative:**

### DISPATCH INFORMATION:

On July 19, 2019 at 11:45 p.m. The Dillingham Police Department received a report form and anonymous male who stated he just picked up a minor from K▪▪▪▪ F▪▪▪ residence and the minor stated that Constantine Akelkok attempted to rub F▪▪▪ leg and private area trying to make sexual contact. The minor also stated that Akelkok pushed F▪▪ down and said "drink with me".

### OFFICER INFORMATION:

Sgt. Etheridge and I responded. We arrived at the residence on Squaw Creek and observed the door to the windbreak and the residence to be wide open. Sgt Etheridge and I did not hear any sound coming from the inside of the residence. Sgt Etheridge called out "Dillingham Police, Is anyone in here" there was no response.

Sgt Etheridge stepped inside the home and observed Akelkok on top of F▪▪▪. F▪▪▪ was not awake and not responsive. Akelkok and F▪▪ were both completely nude. Akelkok was on on top of F▪▪ thrusting his hips.

Sgt Etheridge asked Akelkok what he was doing. Akelkok got off of F▪▪ and sat next to her on the couch. Sgt Etheridge called out to F▪▪ and asked her if she was awake. F▪▪ did not respond. Akelkok asked who is that? We responded "Dillingham Police Department" Akelkok asked "Why are you guys here?" Sgt. Etheridge told Akelkok to come here and he replied "No" Sgt Etheridge yelled "F▪▪" and she did not respond.

Akelkok was told to put clothes on and come outside to speak with Sgt Etheridge he replied "No, I'm under the influence" He stated "this is my girlfriend" Sgt. Etheridge replied "she looks like she is passed out" Akelkok replied "I know, that's why I am watching her"

Akelkok was wrapped in a towel and went outside to speak with Sgt Etheridge. I scratched F▪▪ and called her name and she mumbled. I told her who I was and asked her to sit up and speak to me.

I could smell a strong odor of alcohol coming from her breath and person. She had slurred speech.

K▪▪▪▪ F▪▪▪ INTERVIEW: ▪▪▪▪▪▪

On July 20 at 12:15 I interviewed F████ at her residence on Squaw Creek. I asked F███ who Akelkok was to her and she stated he's just a friend. I asked F███ how drunk are you right now? Are you really drunk? She replied "kinda"

I asked F████ is Akelkok sexually assaulted her and she replied "No, he's just a friend. He has never put the moves on me or done nothing to me. He's just a friend" I said to F███ "you are naked and he is naked" she replied but I was unable to understand her.

I asked F████ where her daughter was and she stated that she was with a friend. I asked F████ if she was Ok with Akelkok being next to her naked and she said yes. I said "I don't want to see you drunk and him take advantage of you" she replied "no he hasn't"

I heard motion coming from the windbreak and I ran to assist Sgt. Etheridge who was trying to place Akelkok in handcuffs my body cam came off and turned off. I was unaware that it turned off and I turned it back on when I realized it was off.

I asked F████ what was she doing with Akelkok. She stated she drank R&R together and went to bed. I asked F████ how much did you drink and she stated a couple fifths. I asked her what time did he get here and she said 9:00p.m.

I asked F████ when did you get naked and she said "I've been naked for a few hours now". She rambled on but I was unable to understand what she said. I asked F████ if she had sex earlier with Akelkok and she replied "No" I asked F████ if she was aware that Akelkok was lying next to her naked? She replied "yeah" I asked F████ at what point did he get naked? She replied "I don't know, I couldn't tell you but we laid together naked a few times. He could have been drunk. I could have been drunk..... I was drunk he wasn't. He was drunk I wasn't."

I asked F████ did you watch him get naked or did you wake up to him being naked? She replied "no, we were naked together it's no big deal. It's not like he came onto me completely naked. It was a mutual agreement for sure"

Sgt. Etheridge asked F████ "do you remember having sex?" F████ replied "No, we didn't have sex. We were just naked laying together" Sgt Etheridge explained that when we arrived both doors were open, we yelled and you weren't answering. When we came inside the door he was on top of you. It looked like you were having sex, It looked like he was having sex. We yelled your name a few more times and you were not awake. F████ replied "It's not like it was unmutual. I like him, I've always liked him. Whatever happened, happened. I don't know how else to explain it. It wasn't forced. I definitely agreed to him. I don't know how to explain it. I'm fucked up. I like him. I've always like him. What happened, happened. If we fucked, we fucked"

I asked F████ have you had sex with Akelkok before? She replied "No, but we've had foreplay before" I asked F████ So, before today you have never had sex with him? She replied "before today we have never fully gone in but we fore played around and flirted with each other"

Sgt. Etheridge asked Did you want to have sex tonight? She replied "yeah I wanted too, HA. Fuck yeah I wanted to. I'm a woman I don't report to nobody" Sgt. Etheridge asked do you remember having sex tonight? She replied "yes and no." I asked her what do you mean by yes? She replied " I remember the beginning of it and I wanted it and towards the end I may have blacked out but I still wanted it.

I asked F████ what time did Akelkok get here. She replied " he's been here all night. He's been here since before 24 hours happened" I said so he's been here all day hanging out? She replied "fuck yeah he has" I asked F████ did you work today? She replied "yeah I worked" I asked was he here while you were at work or did he come here after you got off work? She replied " I have no idea. No, He was here after. I said so he didn't get here until this afternoon? She replied "yes Ma'am"

I asked F████ who bought the alcohol? She replied "I bought it" I asked her what did you buy? She replied "I bought it. I bought some R&R. I bought a case. I was about to get fucked up and he's gonna get fucked up with me. Because he likes me and I like him. Big Bitches need lovin too."

I asked F▮▮ was there ever a point where you didn't want him here or you weren't comfortable? She replied "no Ma'am. If I was ever uncomfortable or I didn't want him here I would have called you guys. There was never a point where I felt uncomfortable or felt violated"

I asked again, What time did you get here and start drinking? She replied "about 7' o'clock." Sgt. Etheridge asked F▮▮ was your daughter here earlier? She replied "yes she was" I asked F▮▮ did someone come and get her or did she walk somewhere? She replied she's not here obviously. I asked where is she? She replied " I do know where she is. She's with a friend" Sgt Etheridge asked F▮▮ Were you awake when they came and got her? She replied "of course I was. I let her go to my friend before she even knows I was drinking"

Sgt Etheridge explained that KF called the Police Department and said she saw Akelkok try and sexually assault you. She replied "I have a bad past with alcohol(unable to understand what else she said)" I asked F▮▮ if she heard what Sgt Etheridge said? She replied No and repeated what Sgt Etheridge said. She replied "I've been laying on the couch this whole time" I said so your daughter was here at that point? Did you call for someone to come get her or did she call for someone to come get her? She replied "my daughter does not have access to a phone. I asked her how did your daughter call the police department? She replied "I have no idea. She has not left my house to have access to a phone" I stated you were passed out how would you know that? Sgt. Etheridge stated you were not conscience when we got here. F▮▮ replied "so, you gonna take my kid from me or not?"

Sgt Etheridge told F▮▮ that he was concerned about what happened to her tonight. F▮▮ replied "I'm fine. I have not been sexually assaulted" Sgt. Etheridge said I'm more concerned about what he did. It was his responsibility. It's not OK for him to have sex with you if you were not conscience and you were not. F▮▮ replied " I have been through a lot. My child has been through a lot. If I thought she was sexually assaulted I would have said something, let alone me. I've been raped" I replied we are trying to make sure that isn't happening now. F▮▮ replied "I don't think my daughter has been raped" I replied we are not talking about your daughter we are talking about you. She replied " I don't think I've been raped either"

I was explaining to F▮▮ that when we came in she was not aware. She replied "Well if you wanna do a rape test on me I'm willing to do it" I asked F▮▮ did you consent to sex when you were awake? You were blacked out when we came in. F▮▮ replied " If you wanna take me when I'm blacked out then I will take it"

I explained to F▮▮ that I needed a timeline of the days event. She stated that she worked at N&N from 8:30-1:30 or 2:30. When she got off she came home, spent time with her kids, went to her Aunt Willows and didn't bring her daughter home until 9p.m. She stated that her daughter went to bed at 7:30 or 8:00 then she went to see her friend for about two hours then she came home. She stated that her daughter was at home with her friend Tori.

I explained to F▮▮ that parts of the story are still missing. I asked her when did Akelkok get here? She replied "he's been here for two days" I asked F▮▮ if he's stayed at the house for two days? She replied "yeah, Has he done nothing to me or my child, NO. Has be put the moves on me or my child, NO.

I stated to F▮▮ that she said she had consensual sex with Akelkok. She replied " I did, yesterday early in the morning...that was it. That doesn't mean he touched my daughter"

F▮▮ stated I had sex with Akelkok because I wanted to, not because I needed to.

F▮▮ stated that she needed to pee and stood up fell down. She fell face first onto the floor. She stood up and stumbled into the bathroom. I waited outside the bathroom. When she was finished she climbed a ladder into the attic and went to sleep. I did not follow because I was alone and unaware of what was upstairs.

I asked F▮▮ what was upstairs? She replied "noneya, goodbye" I asked F▮▮ where is your daughter? She replied "she's not here. She's at Heathers"

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 39 of 53

I said to F████, your daughter is next door at Heathers? Is that where she would have called the police from? She replied "Yeah"

I asked F████ if she had sex with Akelkok yesterday morning? She replied "yes" I asked F█ if she had sex with Akelkok tonight? She replied "not yet but I'm about to though" I asked her if she was aware Akelkok was having sex with her when we walked in? She replied "no"

Sgt. Etheridge returned to the residence and climbed upstairs into the attic. F█ was passed out. I called her name and shook her and got no response. I continued to call her name and shake her. She responded and I asked her if she wanted to go to the hospital and do a SART kit. She did not respond.

I shined my flash light in her face and shook her. I asked her again if she wanted to go to the hospital and do a SART Kit, I got no response. I shook her even harder and asked her if she wanted to go to the Hospital and do a SART kit. She replied "no"

## WILLOW OLSON INTERVIEW: ███████████

On July 20, 2019 at 01:20 a.m I interviewed Olson at her residence on Kanakanak Road.. Olsen stated that Gregory brought F████ daughter to her at midnight. Olsen stated that she is her regular babysitter 5-6 days a week. Willow stated that when he dropped KS off he stated that it looked like Akelkok was doing something to F████ Willow stated that she told him to call the Police.

Olson stated that KS said that Akelkok slapped her Mom(F████ and was playing between her legs.

## K███████ J██████ INTERVIEW: ███████████

On July 20, 2019 at approximately 1:30 a.m. I interviewed J█████ at Willow Olson's residence. I asked J█████ who lives in your house? She replied "Mommy, Tori and A████" I asked her what did you do when you woke up this morning? She replied " I came here(Willows)" I asked who picked you up from Auntie Willows house? She replied "Mommy" Who was in the car with her? She replied (Questo)Akelkok, and Tori. We went home and Questo made her drink.

What did he make her drink? Did you see what she was drinking? She replied "booze" I asked her what do booze look like? How do you know it was booze? She replied "because they showed me the bottle" I asked what did the bottle look like? She replied "it was square and the cap was like a square" She stated "after that Gregory picked me up and brought me here" I asked Why did Gregory pick you up? She replied "because they were drinking and I don't feel safe there"

I asked what was Mommy wearing/ She replied " she was wearing a shirt that shows her belly and Questo was sticking his hands in her pants" I asked what was Mommy doing? She replied "they were kissing that's all...and being weird

I asked Where were you when this was happening? She replied "I was on the bed with Mommy and Questo came up and I told him to stop, but he didn't" Where did Questo sit when he came up? She replied "by the edge. My Mom told him to stop but he didn't stop" What was he doing that you wanted him to stop? She replied " he was being weird because he almost bit my Mom on her arm. Then they started kissing and my Mom called me a Bitch" Why did Mommy call you a Bitch? She replied "I don't know" What did you do when Mommy called you a Bitch? She relied "I said I'm not, Then she called me a witch"

I asked then what happened? She replied "Questo kept kissing her but this isn't how my Mom really is" Where was he kissing her? She replied "On the lips but my Mom never kisses Questo. She would never do that. I don't think she knows who that is" What happened after that? She replied "Gregory brought me here"

I said so Gregory walks in the house? She replied "Yeah, and checks on them. I told Gregory I don't feel safe here and he said Ok I'll bring you to Auntie Willows"

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 40 of 53

I asked if anyone was hitting or slapping? She replied "He was hitting my Mom and pulling her hair" I asked Who? She replied "Questo. And hurting her back" "and he was going like this (makes twisting arm motion)" What was she doing ? She replied "she said OW OW OW OW, stop and he didn't stop. He was being really drunk."

Where was that happening? She replied "bottom bunk in the living room. Tori said I'll take care of it. She was trying her best but it didn't work" When did Tori leave? She replied "she left with a guy. I don't know. She didn't tell me where she was going she said I'll be right back" Was Tori there when he was hitting your Mommy? She replied "yes. She said Get off her but he didn't listen. She was trying to go to the store to get cigarettes and he kept tackling her. He wouldn't let her go anywhere"

Was there any point when your Mommy was asleep and not responding? She replied "She was asleep and I'm not sure that she know that Questo...My Mom does not like Questo at all" Has Questo ever been at the house before today? She replied "everyday he goes" Have you ever seen him hit Mommy or pull her hair before tonight? She replied "No, He always acted good and then this happened. It made me feel really scared and not safe"

## AKELKOK SART EXAM: JULY 20, 2019

On July 20, 2019 Sgt. Etheridge applied for a search warrant. On 07/20/2019 at 01:29 a.m. a search warrant was granted. SW 3AN-19-2369SW was served to Akelkok. A SART exam was conducted on Akelkok at the Dillingham Police Department by Sgt Etheridge. The SART exam was entered into evidence and sent to the Alaska Crime Lab in Anchorage, AK.

## JULY 28, 2019 :

## F████ RE-INTERVIEW:

I located F████ at Gregory Woods residence on Fairview. F████ stated that on the day in question she got up and went to work as usual. She stated Akelkok had been hanging out, she was sober and he was sober. After work she picked her kids up from the sitter. Her son asked if he could camp at 8:00 p.m. she said yes, She went to celebrate recovery but ended up leaving due to a tense environment. They left there and went to her house where they started drinking.

She stated they were cleaning and listening to music. She stated that she doesn't remember Wood coming over or sleeping by her daughter. She does remember that earlier in the evening her daughter was upset and she had to calm her down. She stated she was not drunk at that point.

She stated she woke up the next morning with no clothes on, upstairs in her room, Akelkok laying next to her. She stated that she thought she had to work so she took Akelkok to work and went to work but she didn't have to work. She returned to her house and Wood showed up and told her what happened.

She stated the night of the incident Akelkok had a case of alcohol. She stated they were fifths of R&R. She stated that she was drinking R&R with blue Kool-Aid and she shared a fifth with Akelkok.

F████ stated that Akelkok had come on to her before but she told him she was a friend and a sober support. She stated that he always took it well .She stated that he came on to her at least once or twice a day.

F████ stated that the next morning Akelkok did not saying anything about the night before and did not act any different She stated when she dropped him off at work he said " I'll see you later" She stated that he has tried to contact her but she blocked him on her cell phone and got a restraining order. She stated that he showed up at her house on Saturday and she hid inside her house and Wood went outside and spoke to Akelkok. Akelkok came to pick up a speaker and his box, F████ stated she did not have a restraining order at that time.

## GREGORY WOOD INTERVIEW: ████████

On July 28, 2019 at approximately 12:00p.m. I interviewed Wood at his residence on Fairview Lane. Wood stated that while at work on June 19, 2019 he received three missed calls from F████. He stated

Case 3:22-cv-00014-JMK    Document 1-1    Filed 01/24/22    Page 41 of 53

that he called her back and she didn't answer. He stated that he went to the residence to check on F█████ When he arrived KJ was laying on the bed next to F████ Wood looked for F████ phone and Akelkok pushed KJ out of the way.

Wood stated that he tried to wake F████ up and she wouldn't wake up. Wood stated that he went into the kitchen to look for a phone number and KJ followed him into the kitchen. Wood stated that KJ was shaking and stated that she didn't feel safe. Wood told KJ that he would take he to her Aunt's house. KJ told Wood that Akelkok slapped F████ and shoved her on the bed. Wood called that Police Department and reported the sexual assault but stated he did not give his name.

### TORI KRUEGER INTERVIEW: █████████

On July 28, 2019 at approximately 12:30p.m I interviewed Krueger at Gregory Wood's residence on Fairview Lane. Krueger stated that she got off of work and went to F████ house. When she arrived F████ Akelkok and KJ were there. She stated F████ and Akelkok were drinking. She stated that she doesn't drink so she left. She stated that when she left at 11:00p.m, F████ was asleep on the couch with KJ and Akelkok was upstairs asleep.

### JARED EARL DAVIDSON: DOB 02/05/84

On August 03, 2019 I arrived at the Dillingham Public library and made contact with Davidson. Davidson is the known boyfriend of F████ Davidson provided a buccal swab for the Crime Lab. Davidson admitted to having sexual intercourse with Farler within the last three weeks prior to the sexual assault.

I used a sterile Q-Tip and rubbed the inside of Davidson's left and right cheek.

### EVIDENCE:

On August 18, 2019 te following evidence was packaged and sent to the Alaska Crime Lab in Anchorage, AK.

SART exam for F████

SART exam for Akelkok

BUCCAL SAB for Jarod Davidson

CLOTHING worn by F████ at time of SART exam.

### CASE STATUS:

I obtained a warrant 3DI-19-00359CR for Akelkok's arrest on July 20,2019 . On 08/22/2019 at 14:44 Alaska State Trooper, Markiewicz located Akelkok in Ekwok and placed him under arrest for Sexual Assault in the First Degree. He was transported to The Dillingham Jail.

*Officer S. Newman D7*

## Supplementary report

**Author:**     #TKF0 FARNSWORTH, T.                    **Report time:**

**Remarks:**

**Narrative:**

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 42 of 53

**DISPATCH INFORMATION:**

On 07/20/2019 at 1311 hours Dispatch advised me that Tori Krueger was on the phone requesting to speak to an officer about a SART exam for K█████ F█████

**INVESTIGATION:**

I spoke with Krueger and she stated that she was F█████ friend, and F█████ asked her if she would call dispatch to make arrangements for a SART exam. She stated F█████ would meet me at the hospital at 1400 hours.

At 1357 hours I contacted F█████ and her boyfriend, Jarod Davidson, at the hospital. At 1450 hours Nurse Debra Nielsen arrived and we began the SART interview.

**SART EXAM:**

On 07/21/2019 at 1450 hours I interviewed F█████ at the hospital about the incident.

She stated that her best friend, Gregory Wood, talked to her before she came to the SART exam about the incident. He told her that she tried calling him 3 times the night of the incident and her daughter called him as well. He contacted her at her residence to check on her, and found that she was intoxicated. She stated that Wood then took her daughter to her aunt's residence for safety, and made an anonymous report to the police.

She stated that Constantine Akelkok is a friend that came over to her residence and they started to drink. She said that they were drinking out of 2 one fifth bottles of R&R, and she personally drank 1/2 - a full bottle. She said that she did not use any drugs that night.

She then stated that all she could remember after that was her waking up naked upstairs in her bedroom loft with Akelkok on top of her. She stated that it was approximately 9:30pm when she woke up and that is also when he left.

She told me that she could not remember if he penetrated her or if ejaculation occurred.

She stated that Wood told her Akelkok smacked her, shoved her, and pulled her hair.

She stated that when she woke up she noticed a hickie spanning approximately 1 inch in diameter on the left side of her collar bone. She said she also noticed that both her breasts were hurting and found a bruise on her shoulder. She also stated that the nose ring on the right side of her nose was pulled out and she had dried blood on her nose.

She stated that she did not notice any other injuries on her body, and did not have trouble swallowing or other signs of being strangled.

She stated that she could not remember defending herself physically from Akelkok in any way.

She stated that she could not remember doing anything sexual with Akelkok the night of the incident.

She told me that she had consensual sex with Jerod Davidson on 07/12/2019 and she had consensual sex with a man named "Dow" approximately 3 weeks prior to the incident.

She stated that she does not remember the police showing up the night of the incident.

She said that she had not showered since the incident and was wearing a crop top and sweat pants at the time of the assault and brought them in a bag to the SART exam which she did not launder.

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 43 of 53

## CAC INTERVIEW:

On 07/23/2019 at 1013 hours I arranged a CAC interview at Kanakanak Hospital's Behavioral Health building with F███ daughter K███ J███████████████ Due to emergency calls I left before the interview started. Child Forensic interviewer Leigh Bolin stated that she would create a CD with the recorded interview on it and leave it for an Officer to pick up.

## GLASS WARRANT:

On 07/23/2019 I applied for a glass warrant for F███ and Akelkok and passed it on to Officer Newman.

*Officer Trevor Farnsworth #D8*

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 44 of 53



# Alaska Department of Public Safety

## Incident Report

## Incident: AK19057726

| | |
|---|---|
| **Incident Type:** | Warrant Arrest [WARA] |
| **Incident time:** | 08/22/2019 14:44 - |
| **Reported time:** | 08/22/2019 14:44 |
| **Incident location:** | NEW HUD HOUSING ROAD, Complex: BACK SIDE OF AIRPORT, BLUE HOUSE 1ST ON LEFT EKWOK, Unorganized Borough AK USA 99580 (Beat/zone: RDAD, EKWOK) |
| **Incident status:** | Closed by arrest |
| **Summary:** | On 08/22/2019, at approximately 1230 hours, Alaska State Troopers were conducting an investigation in the village of Ekwok. A person they were interviewing as a part of their investigation, Constantine Akelkok, age 34 of Ekwok, had an outstanding warrant for his arrest from a Dillingham PD case, DP19002623. Sgt. Henry interviewed Constantine and he talked about the incident in question. See report. Akelkok was arrested and transported to the Dillingham Jail where he was remanded with a $10,000.00 cash performance bail. Arrest Warrant 3DI-19-359CR. |

# Incident Activities/Offenses

- Agency Assist Inside AK ()
- Service - Arrest Warrant

# Involved Persons/Organizations

## AKELKOK, CONSTANTINE QUISTO

| | | | |
|---|---|---|---|
| **Classification:** | Arrested; Interview | | |
| **SID:** | AK6706336 | **DL:** | 6706336 AK |
| **Gender:** | Male | **DOB:** | 12/06/1984 |
| **Address:** | | | |

NEW HUD HOUSING ROAD, Complex: BACK SIDE OF AIRPORT, BLUE HOUSE 1ST ON LEFT EKWOK, Unorganized Borough AK USA 99580 (Beat/zone: RDAD, EKWOK)

**E-mail:**

**Telephone:** (Cellular phone) (907) 843-6474

| | | | | |
|---|---|---|---|---|
| **Height:** | 5'10" | **Weight:** | 180lb | **Build:** |
| **Race:** | Indian | **Hair Color:** | Brown | **Eye Color:** Brown |

## Involved Property

- P19030609 / Audio recording : CD/DVD/Blu-ray / Evidence / CD/DVD/Blu-ray SGT. HENRY AUDIO

## Involved Addresses

- NEW HUD HOUSING ROAD / Incident location / BLUE HOUSE 1ST ON LEFT, EKWOK, Alaska, USA 99580 (Beat/zone: RDAD, EKWOK)

## Related Incidents

- Same event / DP19002623 / Sexual Assault [SEXS] / 07/19/2019 23:44

## Involved Officers

- Assisting officer / #CSM3 MARKIEWICZ, CRAIG S / DPS
- Reporting officer / #MRH1 HENRY, MICHAEL R / DPS
- Reporting unit / #DILE AST DILLINGHAM POST / DPS

## Reports

### General report

**Author:** #MRH1 HENRY, M.

**Narrative:**

**Report time:** 08/22/2019 17:08

On the morning of 8/22/19 Trp. Markiewicz and I were preparing to travel to Ekwok to respond to a reported assault that occurred the night of 8/21/19. One of the people mentioned as possibly witnessing the incident was Charles Akelkok who was reported to have left and gone to his dad's house, Philip Akelkok Sr.. That morning, I was informed Charles' brother, **Constantine Akelkok** just had an arrest warrant issued by the Dillingham Court pursuant a Dillingham PD (DPD) investigation, court case **3DI-19-**

014

**359CR**. DPD incident **DP19002623**. I had previously heard a very brief summary about that DPD initial investigation.

On 8/22/19 at approximately 1205 hours, I arrived at Philip Akelkok's house in Ekwok. Ekwok VPO Baehm and Trp. Markiewicz were with me. VPO Baehm told me that was the house Constantine had been staying, which is his dad's house. Philip answered the door and let me inside. In the living room I contacted Charles Akelkok. Charles said Constantine was in his room and indicated I could go in there. I knocked at the bedroom door I then opened the door and saw a man lying on the bed who identified himself as Constantine Akelkok. He came into the living room and talked to me there. I first asked him about the incident that happened last night at Carl's house. He said he left prior to the assault occurring which was later confirmed to me by all the other witnesses.

I then asked Constantine about the incident DPD was investigating involving him and a woman. Constantine said he knew what I was referring to and said he wanted to talk outside. I walked outside with Constantine and talked to him on the porch and VPO Baehm stood near us. I read Constantine his Miranda Rights which he stated he understood and he waived them and agreed to talk with me. Audio recorded.

Constantine stated: I know about an investigation you're referring to with DPD. It happened on a Friday night, no Saturday Night. It was the same day you intercepted the package I tried to ship with Shannon's Air (*Constantine was referring to an incident on 7/17/19, AST incident AK19047807, where I was contacted because Shannon's Air discovered a package he tried to ship to Ekwok contained alcohol but I returned the package to him because there was insufficient evidence for criminal charges.*) I got the alcohol back and that was the alcohol we drank that night. I was over at K[redacted] house. She was supporting me because I was bad into drugs then, into Meth. I was babysitting her because she was drinking and she'd been sober for about 5 months. The other people at the house were **Tori and Richard Tilden**. Tori also worked at N&N Market. Me and K[redacted] both got drunk and then she was all over me. She gave me three hickies, and I was kissing her and we were groping eachother but we didn't have sex. We have been flirtatious in the past but never had sex in the past. I was smoking weed. Then K[redacted] wanted to go to the bar. My cousin (don't remember his name) drove K[redacted] and Tori to the bar. Then they needed a ride home so I drove them home.

Constantine continued: The next day was the day you (AST) intercepted that package. Then I got the alcohol back and that was the night I went to K[redacted] house again. That night I think the same people were there again but I'm not sure. We (me and K[redacted]) drank two bottles of liquor and were both really drunk. Our judgment was impaired. Me and K[redacted] started kissing eachother and we took eachother's clothes off. I was in and out of blackout. I'm not sure if we had sex. I'm pretty sure we had sex since our clothes were off. I remember a little bit about the Dillingham Police officers arriving and faintly remember them coming into the house. My clothes were off when they came in. My memory goes in and out of being at the police station, I was really wasted. We were both drunk. She was awake when she was kissing me.

Constantine continued: It's possible K[redacted] was asleep/passed out at some point when I was having sex with her.

At about 1238 hours I told Constantine he was under arrest for the warrant. We transported him to Dillingham Jail and booked him there at about 1420 hours.

I filed the audio recording on CD and placed it in evidence. Report forwarded to Dillingham PD.

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 47 of 53



# Dillingham Police Department

## Incident Report

## Incident: DP19003431

| | |
|---|---|
| **Incident Type:** | Sexual Abuse of a Minor [SEXB] |
| **Incident time:** | 09/17/2019 14:17 - |
| **Reported time:** | 09/17/2019 14:17 |
| **Incident location:** | 3155 SQUAW CREEK ROAD, DILLINGHAM, Unorganized Borough AK USA 99576 (Beat/zone: RDAA, DILLINGHAM) |
| **Incident status:** | Open, Criminal Incident |
| **Summary:** | Ofc Newman requested a case File for SAM,(victim K███████J█████; suspect Constantine Akelkok) after a CAC interview with K█████on July 31, 2019 ref csae 19-2623. ANT: 116 276 373. |

## Incident Activities/Offenses

- AS11.41.436(a)(2) - SAM 2nd - Being 16 Or Older, Offender Engages In Sexual Contact w/Under 13 Or Aid/Induce/Cause/Encourage Person Under 13 To Engage In Sexual Contact w/Another

## Involved Persons/Organizations

### AKELKOK, CONSTANTINE QUISTO

| | | | | | |
|---|---|---|---|---|---|
| **Classification:** | Suspect | | | | |
| **SID:** | AK6706336 | **DL:** | 6706336 AK | | |
| **Gender:** | Male | **DOB:** | 12/06/1984 | | |
| **Address:** | NEW HUD HOUSING ROAD, Complex: BACK SIDE OF AIRPORT, BLUE HOUSE 1ST ON LEFT EKWOK, Unorganized Borough AK USA 99580 (Beat/zone: RDAD, EKWOK) | | | | |
| **E-mail:** | | | | | |
| **Telephone:** | (Cellular phone) (907) 843-6474 | | | | |
| **Height:** | 5'10" | **Weight:** | 180lb | **Build:** | |

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 48 of 53



| | | | | |
|---|---|---|---|---|
| **Race:** | Indian | **Hair Color:** Brown | **Eye Color:** Brown | |

**F██████, K██████ ██████**

**Classification:** Mentioned in report

| | | | |
|---|---|---|---|
| **SID:** | ███████ | **DL:** | ███████ |
| **Gender:** | Female | **DOB:** | ███████ |
| **Address:** | None | | |
| **E-mail:** | | | |
| **Telephone:** | ███████████████ | | |
| **Height:** | ████ | ████ ████ | **Build:** |
| **Race:** | Indian | **Hair Color:** Brown | **Eye Color:** Brown |

**J██████, K██████ ██████**

**Classification:** Victim

| | | | |
|---|---|---|---|
| **SID:** | ███████ | **DL:** | |
| **Gender:** | Female | **DOB:** | ███████ |
| **Address:** | None | | |
| **E-mail:** | | | |
| **Height:** | ████ | **Weight:** ████ | **Build:** |
| **Race:** | | **Hair Color:** Blonde or strawberry | **Eye Color:** Brown |

## NANALOOK, CHLOE FRANCIS

**Classification:** Mentioned in report

| | | | |
|---|---|---|---|
| **SID:** | ███████ | **DL:** | ███████ |
| **Gender:** | Female | **DOB:** | ███████ |
| **Address:** | ███████████████ ████ (Beat/zone: RDAA, DILLINGHAM) | | |
| **E-mail:** | | | |
| **Telephone:** | ███████████████ | | |

| Height: | ███ | | | | Build: | |
| Race: | | | Hair Color: | Brown | Eye Color: | Brown |

## OLSON, WILLOW ALANA

| **Classification:** | Mentioned in report | | |
| SID: | ███████ | DL: | ████████ |
| Gender: | Female | DOB: | ███████ |
| Address: | ████████ ████████████ ████████ ████ |
| | (Beat/zone: RHWF, GOLOVIN) |
| E-mail: | |
| Telephone: | ████████ ███ ██████ |
| Height: | ███ | Weight: | █████ | Build: | |
| Race: | White | Hair Color: | Brown | Eye Color: | Blue |

## WOOD, GREGORY JAMES

| **Classification:** | Mentioned in report; Witness | | |
| SID: | ████████ | DL: | ██████ |
| Gender: | Male | DOB: | ███████ |
| Address: | None |
| E-mail: | |
| Telephone: | ████████████ |
| Height: | ███ | Weight: | █████ | Build: | |
| Race: | Indian | Hair Color: | Black | Eye Color: | Brown |

## Involved Addresses

- ████ SQUAW CREEK ROAD / Incident location / DILLINGHAM, Alaska, USA 99576 (Beat/zone: RDAA, DILLINGHAM)

## Involved Comm Addresses

- ████ ████████ █████ / Originating

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 50 of 53

## Involved Officers

- Reporting officer / #SMN0 NEWMAN, SUSAN M / DIL
- Reporting unit / #DILU DILLINGHAM POLICE PATROL / DIL
- Call taker / #CLM7 WASSILY, CHELSEA L / DIL

## Reports

### Victim report

| | | |
|---|---|---|
| Subject: | J▋▋, K▋▋ / Victim / DOB: ▋▋▋▋ | Gender: Female |
| Author: | #SMN0 NEWMAN, S. | Report time: 09/25/2019 15:48 |

Offender/Offense:

Victim services notified:

Victim services notified by:        Victim services accepted:

Victim notified:

Sexual assault kit:        No        Time:

### General report

| | | |
|---|---|---|
| Author: | #SMN0 NEWMAN, S. | Report time:  09/23/2019 14:01 |

Narrative:

OFFICER INFORMATION:

On July 28, 2019 at 10:30 a.m. K▋▋▋J▋▋▋was interviewed at the Child Advocacy Center. J▋▋▋ was a witness to a sexual assault.

During the interview J▋▋▋ stated that she calls her vagina " private property" and a penis a "wiener"

K▋▋▋▋ J▋▋▋ DOB ▋▋▋▋

J▋▋▋stated that on July 19, 2019 her Mother, K▋▋▋F▋▋▋picked her up from her Aunt Willows house. When they got home her Mom(K▋▋▋F▋▋ DOB ▋▋▋▋) and Akelkok began drinking. J▋▋▋ stated that her Mom was really drunk.

J▋▋▋stated "gross stuff" started happening. J▋▋▋stated that she was lying on the bed with her Mom. She stated the bed is a bunkbed that is located in the Livingroom. J▋▋▋stated that Akelkok climbed on the bed and laid behind her Mom.

J▋▋▋ stated that her Mom had her clothes when Akelkok put his hands on her mom's "private property" J▋▋▋ stated that she told Akelkok to go away but he said "no"

Case 3:22-cv-00014-JMK   Document 1-1   Filed 01/24/22   Page 51 of 53

J███ stated that Akelkok touched her on her private property. J███ stated that Akelkok used his hands to touch her private property. She stated that she was wearing her pajamas and underwear. She stated that Akelkok touched her under her underwear. She stated that Akelkok called her "the F word and the B word" J███ stated that Akelkok pinched her "pee part." she stated that she didn't tell anyone that Akelkok touched her, she kept it a secret.

J███ stated that Akelkok asked her to touch his wiener and she said "no" and that is when he began touching her Mom. She stated that she told Akelkok to get off the bed but he didn't. She stated that he then began kissing her Mom and the "sex stuff" started happening.

J███ stated that she knows Akelkok was drinking because she saw the bottle. She stated the bottle was clear and the liquid was yellow.

J███ stated that Gregory called F███ three times and she didn't answer. Gregory came to the residence and took J███ to her Auntie Willows for the night.

## CASE STATUS:

On September 23, 2019 I applied for a Summons for Akelkok for Sexual Abuse of a Minor in the Second Degree.

*Officer S. Newman D7*

# Supplementary report

Author: #SMN0 NEWMAN, S.

Report time:

Remarks:

Narrative:

### K███ ██ INTERVIEW: ████████

On November 10, 2019 at approximately 8:00 p.m. I arrived at F███ residence on Wood River Road. F███ stated that on the night of July 19, 2019, her daughter K███ was at residence on Squaw Creek. F███ stated that K███ was in the living room watching T.V while F███ and Akelkok were in the kitchen drinking alcohol.

F███ stated that she doesn't remember much after that. She stated that she blacked out and when she came to, K███i was curled up next to her on the futon. She stated that she was unsure where Akelkok was at that time.

F███ stated that K███ never told her that Akelkok sexually assaulted her. F███ stated that she never asked K███ because she knew there was a proper was to discuss abuse and she didn't want to question her.

## GREGORY WOOD INTERVIEW:

On November 10, 2019 at approximately 9:15 p.m. Wood arrived at the Dillingham Police Department. Wood stated that on the night of July 19, 2019 he arrived at the F███ residence on Squaw Creek. When he entered the home he observed K███ balled up under a blanket, lying next to K███ He stated that K███ asked him to take her to her Aunt's house because she didn't feel safe.

Wood stated that he observed K████ passed out and Akelkok in the residence. Wood stated that he took K████ to her Aunt's house. Wood stated that on the ride to her Aunt's house he asked K████ if Akelkok touched her. He stated that she got really quiet and took a long pause and stated that she didn't want to talk about it.

Wood stated that he dropped K████ at her Aunt's house and immediately called the police to check on K████.

**Officer S. Newman D7**